UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| EDUARDO MUNOZ, | Case No. 18-04655 EJD (PR) |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| RANDULF ERGUIZA, | |
| Defendant. | (Docket No. 20) |

Plaintiff, a California inmate, filed a pro se civil rights complaints under 42 U.S.C. § 1983 against Defendant Nurse Practitioner Randulf Erguiza at Salinas Valley State Prison ("SVSP"). The Honorable Magistrate Judge Maria-Elena James found the complaint, (Docket No. 1), when liberally construed, stated a cognizable Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs, and scheduled briefing on the matter. (Docket No. 9.) The matter was subsequently reassigned to this Court on December 18, 2018. (Docket No. 16.)

Defendant Erguiza filed a motion for summary judgment asserting that Plaintiff failed to exhaust administrative remedies, there are no genuine issues of material fact, and

he is entitled to qualified immunity. (Docket No. 20, hereinafter "Mot."[1]) Plaintiff filed an opposition, (Docket No. 29), along with a declaration, (Docket No. 30), and Defendant filed a reply, (Docket No. 34). For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**.

## DISCUSSION

### I. Statement of Facts[2]

The underlying events of this action took place while Plaintiff was an inmate at SVSP. Defendant Erguiza has been a licensed nurse practitioner in the State of California since April 2014. (Erguiza Decl. ¶ 1.) He was Plaintiff's primary care physician ("PCP") from June 2015 through December 2016, until he was reassigned to a different location beginning January 2017, at which point another physician became Plaintiff's PCP. (Id. ¶ 3.)

#### A. Medical Treatment by Defendant Erguiza

According to Plaintiff's medical records, the earliest documented complaint of pain in his left ring finger appears in a request for medical services form signed by Plaintiff on July 8, 2015. (Ex. A, AG-0105.[3]) Plaintiff was not treated by Defendant Erguiza but a triage nurse who completed review of the service form. (Id.)

On July 20, 2015, Defendant Erguiza treated Plaintiff for the first time for an unrelated issue involving a facial rash as documented in a "primary care provider progress note." (Erguiza Decl. ¶ 24; Ex. A, AG-0104.) There is no mention in this progress note of

---

[1] In support of the motion, Defendant provides his declaration, (Docket No. 20-2), the declaration of non-party Dr. Bright, (Docket No. 20-3), and non-party R. Rogoyski, (Docket No. 20-4).

[2] The following facts are undisputed unless otherwise indicated.

[3] In support of his motion, Defendant filed exhibits under an Evidence Appendix. (Docket No. 20-1.) Any references to exhibits hereinafter refer to this appendix, as identified by exhibit letters A through H.

2

Plaintiff complaining of any pain or other irritation in his finger during this examination. (Id.) Nor is there any mention of pain or other irritation in Plaintiff's finger in the progress note from two subsequent appointments with Defendant Erguiza, on October 13, 2015 and December 9, 2015. (Id. at ¶¶ 25-26; Ex. A, AG-0093, AG-0109.) According to Defendant Erguiza, Plaintiff did not request treatment or identify pain from a sports injury that occurred on approximately July 8, 2015, during the first five months that he treated Plaintiff. (Erguiza Decl. ¶ 27.)

According to Plaintiff, he stated in "each medical examination conducted by Defendant Erguiza" the following: "I am unable to sleep at night because of the pain and my finger gets stuck. Because it gets stuck I can't exercise because it hurts too much. It doesn't bend and I can't grasp objects with the finger and am in sever pain when I attempt to use m[y] hand." (Munoz Decl. ¶ 2.)

The next documentation of Plaintiff reporting pain in his left ring finger is from a Health Care Service Request Form[4] dated December 23, 2015, five and a half months after his initial complaint in July 2015. (Erguiza Decl. ¶ 28; Ex. A, AG-0100.) On the form, Plaintiff stated that the cause of the pain in his finger was from a handball injury approximately two months earlier, i.e., late October 2015. (Id.) Another nurse examined Plaintiff the following day in response to this request and scheduled Plaintiff for a follow-up appointment regarding his finger with a PCP. (Id.)

On January 22, 2016, Defendant Erguiza examined Plaintiff for a follow-up appointment for an unrelated chronic left knee pain as well as his left ring finger complaint. (Erguiza Decl. ¶ 30; Ex. A, AG-0099.) At this appointment, Plaintiff complained of pain in his finger and Defendant noted mild swelling and a deformity of the finger. (Id.) Plaintiff stated he injured his finger playing handball. (Id.) According to

---

[4] Inmates may fill out a Health Care Service Request Form at any time they are in pain or otherwise are seeking medical attention. (Erguiza Decl. ¶ 29.) A registered nurse evaluates the patient and, if necessary, schedules a visit with the PCP by adding it to the PCP's docket. (Id.)

3

Defendant, this was the first time he learned that Plaintiff was experiencing any pain in his left ring finger. (Id.)

Following the January 22, 2016 examination, Defendant Erguiza diagnosed a possible fracture of Plaintiff's left ring finger. (Erguiza Decl. ¶ 31; Ex. A, AG-0099.) Defendant Erguiza requested an x-ray of Plaintiff's finger, put the finger in a buddy splint, and prescribed 500 mg of Salsalate (a medication used to reduce pain, swelling, and joint stiffness) three times a day as needed for pain and inflammation. (Id.) Defendant Erguiza also ordered an MRI of Plaintiff's left knee, and prescribed Tylenol to be taken twice a day to further manage Plaintiff's knee and finger pain.[5] (Id.)

According to Defendant, Plaintiff received the requested x-ray of his finger on January 27, 2016.[6] (Erguiza Decl. ¶ 32.) According to Defendant, the reviewing radiologist identified soft tissue swelling but concluded that no acute osseous injury was evidence, which would indicate a fracture. (Id.) Defendant relied on the radiologist's conclusion in determining a medically appropriate course of treatment for Plaintiff's left ring finger and made a professional medical opinion that the existing course of treatment was appropriate. (Id.)

On February 7, 2016, Plaintiff submitted a Health Care Service Request Form, complaining of his pain medication and follow-up for his x-rays. (Ex. A. AG-0098.) On February 28, 2016, Plaintiff was seen by a triage nurse who noted continued pain in the

---

[5] According to Defendant, this course of treatment was consistent with Pain Management Guidelines (PMG), the California Correctional Health Care Services ("CCHCS") Formulary, California Department of Corrections and Rehabilitation ("CDCR") policy, and the American College of Radiology ACD Appropriateness Criteria for Acute Hand and Wrist Trauma. (Id. at ¶ 32; Ex. F at 4-5; Ex. B at 2, 6-7, 9-10; Ex. C at 2, 43, 67; Ex. D at 2-3; Ex. E at 13-15; Ex. F at 4-5.)

[6] In support of this fact, Defendant refers to Ex. A, AG-0079. (Erguiza Decl. ¶ 32.) However, that document is a Health Care Services Request Form dated November 22, 2016, which contains no information regarding the x-ray or the radiologist's findings. (Ex. A, AG-0079.) Rather, the progress note from a later appointment with Defendant Erguiza on March 3, 2016, states the following: "XRAY 01/27/16 L Hand No osseous abn. Mild 4th finger soft tissue swelling." (Ex. A, AG-0096.)

4

finger at a level of 6/10. (Id.)

On March 3, 2016, Plaintiff had a follow-up appointment with Defendant Erguiza for his finger pain and his knee pain. (Erguiza Decl. ¶ 33; Ex. A, AG-0096.) The progress note from this appointment indicates Plaintiff describing the finger pain as "intermittent," and that he demonstrated an inability to actively flex his finger. (Id.) According to Defendant Erguiza, he was unable to determine the cause of the symptoms in Plaintiff's left ring finger, particularly due to Plaintiff's different recorded statements about when he was injured. (Id.) To treat Plaintiff's symptoms, Defendant Erguiza prescribed conservative medical treatment in the form of Tylenol and 500 mg doses of Salsalate three times a day as needed for pain management. (Erguiza Decl. ¶ 34.) Defendant planned to consider an MRI after 45 days if the symptoms did not resolve and scheduled a follow-up for 45 days later.[7] (Id., Ex. A, AG-0096; Munoz Decl. ¶ 3.)

According to Plaintiff, he complained at this March 3, 2016 appointment that he believed that the existing course of medical treatment was ineffective and requested an MRI and a referral to see an orthopedist. (Compl. ¶ 22.) Plaintiff states that he said: "You are a sorry ass motherfucker of a doctor. You fucking punk." (Munoz Decl. ¶ 5.) According to Plaintiff, Defendant Erguiza stated in response: "Oh yeah?! I knew I didn't like you. You fucked up now. You'll never receive an M.R.I. or see a surgeon as long as I'm your doctor. That[']s what happens when you run your mouth." (Id.) According to Defendant, he does not recall Plaintiff making the derogatory statement towards him on that date, and that if a patient had become agitated or aggressive, he would have recorded it in the progress note. (Erguiza Decl. ¶ 47.)

According to Defendant Erguiza, he may only request medical services that are

---

[7] According to Defendant, this course of treatment was consistent with Pain Management Guidelines, the CCHCS Formular, and CDCR policy. (Erguiza Decl. ¶ 34; Ex. B at 2, 6-7, 9-10; Ex. C at 2, 43, 67; Ex. D at 2-3; Ex. E at 13, 15.) In Defendant Erguiza's medical opinion, as of March 3, 2016, conservative care of Plaintiff's finger injury was medically appropriate and required additional time. (Id. at ¶ 38.)

5

medically necessary and in his professional medical opinion, the medical services Plaintiff believed were appropriate, including an MRI, were not medically necessary at that time. (Erguiza Decl. ¶¶ 37-38.) Consequently, Defendant did not provide these services. (Id., Ex. A, AG-0096.) The progress note states that Defendant would "consider MRI after 45 days if symptoms do not resolve." (Id.)

On April 12, 2016, Plaintiff was examined by Dr. Joseph Chudy, not a party to this action, to address Plaintiff's knee pain; specifically, Plaintiff requested pain medication and surgical repair. (Erguiza Decl. ¶ 40; Ex. A, AG-0074.) Dr. Chudy's progress note from this visit contains no mention of any finger ailments by Plaintiff. (Id.)

On April 14, 2016, Plaintiff was seen by Defendant for his scheduled follow-up appointment. (Erguiza Decl. ¶ 40; Ex. A, AG-0088.) The progress note for this appointment does not contain any reference to complaints regarding Plaintiff's finger, either of continued pain or other symptoms. (Id.) Additionally, the progress note contains no observation by Defendant of any finger condition that would warrant advanced imaging or a specialist referral. (Erguiza Decl. ¶ 40.) According to Defendant, he believed that the conservative course of treatment previously prescribed was effective in eliminating Plaintiff's symptoms. (Id.)

According to Plaintiff's medical records, on at least seven subsequent occasions between March 3, 2016, and November 22, 2016, Plaintiff was seen by medical personnel or submitted requests to be seen by medical personnel; these encounters did not include any mention of finger pain. (Ex. A, AG-0074, AG-0075, AG-0086, AG-0087, AG-0088, AG-0089, AG-0095.) This includes an appointment with Defendant Erguiza on July 24, 2016, to address Plaintiff's chronic knee pain. (Erguiza Decl. ¶ 41; Ex. A, AG-0088.) There is no mention of Plaintiff's finger in the progress note for this visit. (Id.)

On November 22, 2016, Plaintiff filed a request for service form describing finger pain at a level of 3/10. (Ex. A, AG-0079.) On the form, Plaintiff stated that the pain "bothers" him, but Plaintiff did not describe it as serious pain. (Id.) Plaintiff stated he had

6

injured his finger the previous year, i.e., in 2015. (Id.) On November 30, 2016, a triage nurse evaluated Plaintiff regarding the request and noted that there was no observable swelling of Plaintiff's finger. (Id.; Ex. G, Close Out Report – 67 (PCRD).) The nurse marked Plaintiff's finger pain symptom as having been resolved. (Ex. G, Close Out Report – 67 (PCRN).) Defendant Erguiza was not the medical provider assigned to respond to the request, and he was not made aware of the request at the time. (Erguiza Decl. ¶ 42.) Defendant Erguiza was also never scheduled to see Plaintiff about his finger pain thereafter. (Id.; Ex. G, Close Out Report – 67 (PCP).)

On December 18, 2016, Defendant Erguiza saw Plaintiff for the last time for a routine appointment for Plaintiff's Hepatitis C and chronic knee concerns. (Erguiza Decl. ¶¶ 43, 44; Ex. A, AG-0054; Ex. G, Close Out Report – 67 (PCP).) Plaintiff was not seen for any finger issues. (Id.) The progress note from this visit contains no observations by Defendant of any medical evidence of a finger condition that would warrant advanced imaging or specialist referral. (Id.)

Plaintiff claims that Defendant Erguiza acted with deliberate indifference to his serious medical needs when he intentionally delayed, denied, and/or interfered with his medical care for his finger, in violation of the Eighth Amendment. (Compl. at 6.)

B. **Medical Treatment Thereafter**

On January 14, 2017, Plaintiff submitted a request for services form asking when he would be scheduled to be seen for his finger. (Ex. A, AG-0091.) The following day, he was seen by a nurse. (Id.) Unlike prior visits regarding his finger where Plaintiff attributed his finger pain to a handball injury in 2015, this time Plaintiff reported to the nurse that he "jammed" his finger the previous year, i.e., in 2016. (Id.) The nurse evaluated Plaintiff's finger and noted no swelling. (Id.) The nurse prescribed warm compresses and referred Plaintiff to his PCP for a routine follow-up. (Id.) The nurse did note any symptoms of a serious injury, did not schedule Plaintiff for an urgent care visit, and did not prescribe any treatment for a serious injury. (Id.)

7

On March 27, 2017, Plaintiff was seen by Dr. Vu, not a party to this action, for his finger pain. (Ex. A, AG-0150.) Dr. Vu diagnosed Plaintiff with a possible trigger finger condition and requested an orthopedic evaluation of Plaintiff's finger for possible release of trigger finger. (Id.) There was no indication in Plaintiff's medical records for 2016 of any symptoms of a trigger finger injury during that year. (Bright Decl. ¶ 15.)

Plaintiff received a consult with Dr. Thomas Zewert who recommended ligament repair on May 5, 2017. (Compl. at 5.) Plaintiff elected to undergo surgery, which took place on July 6, 2017, at Las Ventanas Surgery Center. (Ex. A, AG-0084, AG-0210.) The surgery allowed for an "overall excellent repair" without complications. (Id.) As of November 2018, Plaintiff was in "general good health." (Id. at AG-0386.)

### C. Administrative Grievances

According to Plaintiff's appeal history report, Plaintiff only filed one grievance during the time Defendant Erguiza was his PCP: appeal No. SVSP-HC-16055006, filed on March 16, 2016. (Ex. H, Docket No. 20-1 at 213-214.) In this grievance, Plaintiff indicated disagreement with the treatment he was receiving for his knee, including pain management. (Id.) This grievance did not reference Plaintiff's finger pain treatment. (Id.)

The only grievance that Plaintiff filed relating to the treatment of his finger pain was filed on July 31, 2017, appeal No. SVSP-HC-17058052. (Docket No. 20-1 at 221, 223.) This is the grievance which Plaintiff relies on as exhausting the claims in this action. (Compl. at 2.) In appeal No. SVSP-HC-17058052, Plaintiff complains that "medical staff are being deliberately indifferent to my serious medical needs by failing to provide surgery to repair a torn ligament in a timely fashion and medication to treat the severe pain associated with a torn ligament and surgery." (Docket No. 20-1 at 221, 223.) Plaintiff makes no mention of any specific individual in this grievance, including Defendant Erguiza. (Id.)

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show

8

that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

9

The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A. Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 84 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." Id. Even when the relief sought cannot be granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust administrative remedies. Id. at 85-86 (citing Booth, 532 U.S. at 734). The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. Id. at 93.

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." Jones v. Bock, 549 U.S. 199, 217-18 (2007). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. Id. at 218. In California, the regulation

10

requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action requested.'" Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)); Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (same). California regulations also require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. Id. The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. Id. The grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." Id. (citation and internal quotation omitted) (no exhaustion where grievance complaining of upper bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk but officials disregarded that order); see Wheeler, 772 F.3d at 840 (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer who applied pressure to inmate's ankle deliberately to inflict pain).

Nonexhaustion under § 1997e(a) is an affirmative defense. Jones, 549 U.S. at 211. Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. Id. at 215-17. In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). Otherwise, defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Id. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a

11

defendant is entitled to summary judgment under Rule 56. Id. at 1166. But if material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts in a preliminary proceeding. Id.

The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. Id. at 1172; see id. at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust); see also Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005) (as there can be no absence of exhaustion unless some relief remains available, movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting results of relief already granted as result of that process). Once the defendant has carried that burden, the prisoner has the burden of production. Albino, 747 F.3d at 1172. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. Id. But as required by Jones, the ultimate burden of proof remains with the defendant. Id.

Defendant argues that Plaintiff failed to exhaust administrative remedies with respect to the claim against him. (Mot. at 20.) Defendant submits evidence showing that the only grievance which Plaintiff filed during the time that Defendant Erguiza was his PCP was appeal No. SVSP-HC-16055006, filed on March 16, 2016. See supra at 8. However, this grievance did not reference Plaintiff's finger pain treatment and only involved Plaintiff's disagreement with the treatment for his knee. Id. Accordingly, it cannot be said that this appeal exhausted the claim against Defendant Erguiza for his treatment of Plaintiff's finger.

In the complaint, Plaintiff identified health appeal No. SVSP-HC-17058052 as exhausting the claims in this action. (Compl. at 2.) However, this grievance was filed on

12

July 31, 2017, which was over seven months after Defendant Erguiza examined Plaintiff for the last time on December 18, 2016. See supra at 7. Furthermore, Defendant Erguiza was assigned to a different location in January 2017, and was no longer serving as Plaintiff's PCP at the time the appeal was filed. Accordingly, it cannot be said that this appeal could be understood as addressing the medical treatment Plaintiff received from Defendant Erguiza when he had not been under Defendant's care for the seven months preceding the appeal.

In opposition, Plaintiff asserts that appeal No. SVSP-HC-17058052 went through each stage of the appeal process... without procedural defect," and that he "exhausted my administrative remedies, and a decision was rendered at each stage by the administration on the merits." (Opp. at 17.) He asserts that he was not required to litigate every single fact of his complaint during the appeal process, and that he addressed the "undue delay in treatment" in his grievance. (Id. at 18.)

In reply, Defendant asserts that appeal No. SVSP-HC-17058052 did not provide the prison with adequate notice of Plaintiff's claim against Defendant Erguiza because it did not "alert the prison to a problem and facilitate its resolution." (Reply at 3, citing Griffin, 557 F.3d at 1120.) Defendant points out that there is no mention of a verbal altercation, nor any retaliatory animus, nor Defendant's alleged failure to provide additional treatment for Plaintiff's symptoms of finger pain in 2016. (Id.) The undisputed facts also show that Plaintiff's ligament injury was not diagnosed until May 2017, while under the care of another PCP and specialists. (Id.) As such, Defendant asserts that it is not plausible that the grievance could have prompted the prison to investigate allegations against Defendant Erguiza for care received the previous year. (Id. at 3-4.)

Viewing the undisputed evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff failed to properly exhaust administrative remedies for his claim against Defendant Erguiza. First of all, the Court notes that Plaintiff filed a grievance on March 16, 2016 involving an allegation of inadequate medical treatment against Defendant

13

Erguiza for his chronic knee pain. See supra at 8. Plaintiff could have complained about inadequate medical treatment for his finger in that grievance, especially since he had just seen Defendant Erguiza on March 3, 2016, for both his finger and knee pain, but he did not. Id. at 5. Furthermore, Plaintiff makes no mention of Defendant Erguiza in appeal No. SVSP-HC-17058052 or complain of any specific inadequate care he received while under Defendant's care. Although Plaintiff is correct that the grievance made it through all the stages of review and that he need not litigate every single fact from his complaint, Griffin also requires that the grievance include sufficient information "to allow prison officials to take appropriate responsive measures." 557 F.3d at 1120. Based on the information provided in appeal No. SVSP-HC-17058052, it cannot be said that the prison had notice of any claim against Defendant Erguiza, specifically since he ceased being Plaintiff's PCP seven months prior to the filing of the grievance. Lastly, the regulations specifically require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3). Appeal No. SVSP-HC-17058052 clearly did not satisfy these requirements with respect to the Eighth Amendment claim against Defendant Erguiza in this action.

Based on the foregoing, Defendant has shown that inmate appeal No. SVSP-HC-17058052 does not satisfy the exhaustion requirement for any claims in this action, and that Plaintiff otherwise failed to properly exhaust all available administrative remedies with respect to any of those claims. Plaintiff has failed in opposition to show that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him or that he was incapable of filing a timely appeal. *Albino*, 747 F.3d at 1172. Accordingly, Defendant is entitled to summary judgment under Rule 56 based on Plaintiff's failure to exhaust administrative remedies. Id. at 1166.

Because Plaintiff has failed to exhaust any of the claims in the instant action, the Court need not address Defendant's motion for summary judgment on other grounds.

14

## CONCLUSION

For the reasons stated above, Defendant Randulf Erguiza's motion for summary judgment is **GRANTED**. (Docket No. 20.) The Eighth Amendment claim against him is **DISMISSED** for failure to exhaust administrative remedies. See Albino, 747 F.3d at 1166.

This order terminates Docket No. 20.

**IT IS SO ORDERED.**

Dated: 1/7/20

EDWARD J. DAVILA
United States District Judge

Order Granting Def's' MSJ
PRO-SE\EJD\CR.18\04655Munoz_grant.msj(exh)

15